**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Renee V. Masongsong (SBN 281819)
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ANGIE NUNEZ, individually and as successor in interest to Lawrence Gonzales, deceased; KRYSTAL GONZALES, individually and as successor in interest to Lawrence Gonzales, deceased; and E.B., individually and as successor in interest to Lawrence Gonzales, deceased, by and through his guardian *ad litem*, Kameron Shawn Perez;

Plaintiffs,

v.

CITY OF LOS ANGELES and DOES 1–10,

Defendants.

Case No.:

**COMPLAINT FOR DAMAGES**

Federal Law Claims (42 U.S.C. § 1983)

1. Unlawful Detention and Arrest (Fourth Amendment)
2. Excessive Force (Fourth Amendment)
3. Denial of Medical Care (Fourth Amendment)
4. Interference with Familial Relationship (Fourteenth Amendment)
5. Municipal Liability, Unconstitutional Custom or Policy
6. Municipal Liability, Failure to Train
7. Municipal Liability, Ratification

State Law Claims

8. False Arrest/False Imprisonment (wrongful death)
9. Battery (wrongful death)
10. Negligence (wrongful death)
11. Violation of Cal. Civil Code § 52.1

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DAMAGES

COME NOW, Plaintiffs ANGIE NUNEZ, KRYSTAL GONZALES, and minor Plaintiff E.B., by and through his guardian *ad litem*, Kameron Shawn Perez, in each case individually and as successor-in-interest to Lawrence Gonzales, and hereby bring this Complaint for Damages against Defendants CITY OF LOS ANGELES and DOES 1–10, and hereby allege as follows:

## INTRODUCTION

1. This civil rights and wrongful death action arises out of the fatal shooting of Lawrence Gonzales ("DECEDENT") by police officers ("DOE OFFICERS") working for the Los Angeles Police Department ("LAPD") on December 31, 2025, in San Pedro, California. DECEDENT, who was unarmed and posed no immediate threat of death or serious bodily injury at the time of the shooting, was shot by DOE OFFICERS, resulting in his death. The use of deadly force was excessive and objectively unreasonable under the totality of the circumstances.

2. This action is brought pursuant to 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and California state law.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

4. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue in this judicial district is proper pursuant to 28 U.S.C.

§ 1391(b) because all incidents, events, and occurrences giving rise to this action occurred within this district.

6. On April 3, 2026, Plaintiffs served their comprehensive and timely claims for damages on their own behalf and on behalf of DECEDENT with the CITY OF LOS ANGELES pursuant to applicable sections of the California Government Code. The claims were rejected on May 19, 2026.

## PARTIES

7. Lawrence Gonzales ("DECEDENT"), a 39-year-old man, was shot on December 31, 2025, by DOE OFFICERS working for the LAPD. At all relevant times, DECEDENT was an individual residing in Los Angeles, California.

8. Plaintiff E.B. ("E.B.") is the minor child of DECEDENT. Plaintiff E.B. appears in this action through his guardian *ad litem*, Kameron Shawn Perez. E.B. sues both in his individual capacity as the son of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60. E.B. seeks survival and wrongful death damages under federal and wrongful death damages under state law.

9. Plaintiff ANGIE NUNEZ ("NUNEZ") is the mother of DECEDENT. NUNEZ sues both in her individual capacity as the mother of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60. NUNEZ seeks survival and wrongful death damages under federal and wrongful death damages under state law.

10. Plaintiff KRYSTAL GONZALES ("GONZALES") is the adult daughter of DECEDENT. GONZALES sues both in her individual capacity as the natural child of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.60.

GONZALES seeks survival and wrongful death damages under federal law and wrongful death damages under state law.

11. Plaintiffs were financially dependent on DECEDENT, to some extent, for the necessities of life.

12. Defendant CITY OF LOS ANGELES ("CITY") was and is a political subdivision of the State of California located within this judicial district. CITY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and departments, including the LAPD, and for ensuring that the actions of its employees comply with the laws and Constitutions of the United States and the State of California. CITY was the employer of DOES 1–10.

13. Defendants DOES 1-8 ("DOE OFFICERS") are police officers employed by LAPD. At all relevant times, including during the shooting giving rise to this lawsuit, DOES 1-8 were acting under color of state law, within the course and scope of their employment with the CITY, and with the actual or ostensible authority and ratification of CITY.

14. Defendants DOES 9-10 are supervisory, managerial, policymaking, or final policymaking officials employed by CITY and/or LAPD. At all relevant times, DOES 9-10 were acting under color of law, within the course and scope of their duties, and with the authority and ratification of CITY.

15. Plaintiffs are currently unaware of the true names and capacities of Defendants sued herein as DOES 1–10 and therefore sues these Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on that basis alleges, that each DOE Defendant is responsible in some manner for the conduct and injuries alleged in this Complaint.

16. Plaintiffs are informed and believe, and on that basis allege, that each Defendant, including DOES 1–10, acted as an agent, employee, co-conspirator, and/or joint actor with each of the other Defendants, and in doing the acts alleged herein, acted within the scope of such relationships and with the knowledge, consent, and approval of the other Defendants.

17. Pursuant to California Government Code § 815.2, Defendant CITY is vicariously liable for the acts and omissions of DOES 1–10 to the extent those acts and omissions occurred within the scope of their employment. Defendant CITY is also liable under California Government Code § 815.6 for its failure to discharge a mandatory duty. Defendants DOES 1–10 are liable under California Civil Code § 820(a).

18. All natural person Defendants, including DOES 1–10, are sued in their individual capacities. Defendant CITY is sued for its direct liability under *Monell* and for vicarious liability under California state law. Plaintiffs seek punitive damages against the individual defendants only.

## **FACTS COMMON TO ALL CLAIMS FOR RELIEF**

19. On December 31, 2025, at approximately 9:40 p.m., DOE OFFICERS responded to a call for "unknown trouble, possible restraining order violation" at or around the 500 block of West 37th Street, near South Pacific Avenue in the City of San Pedro, California. The reporting party, DECEDENT's girlfriend, informed DOE OFFICERS that she and DECEDENT were permitted to have "peaceful contact" but that she wanted DECEDENT removed from her apartment. DOE OFFICERS had no information that DECEDENT had a weapon and no information that anyone had been injured. DOE OFFICERS encountered DECEDENT inside the reporting party's apartment. When DOE OFFICERS attempted to physically restrain DECEDENT, an officer-involved shooting occurred. DECEDENT

was struck by shots fired by DOE OFFICERS. DECEDENT was transported to the hospital, where he succumbed to his injuries caused by the gunshots.

20. At the time of the shooting, DECEDENT was unarmed and posed no immediate threat of death or serious bodily injury to any person. DOE OFFICERS had less-lethal options available and had time to assess the situation. The use of deadly force under these circumstances was excessive and objectively unreasonable and contrary to police standards and training.

21. DOE OFFICERS failed to provide a clear verbal warning that deadly force would be used, gave conflicting and confusing instructions to DECEDENT, and DECEDENT was not given an adequate opportunity to comply with DOE OFFICERS' commands before he was shot.

22. Upon information and belief, following the shooting, DOE OFFICERS failed to render timely medical aid to DECEDENT.

23. As a direct and proximate result of the shooting and the failure of DOE OFFICERS to provide timely medical aid, DECEDENT endured prolonged and unnecessary pain and suffering prior to his death and ultimately died from his gunshot wounds.

24. The shooting of DECEDENT reflects a broader pattern of inadequate training, supervision, and accountability within the LAPD regarding the use of deadly force, particularly in situations that do not justify such force.

25. Plaintiffs are informed and believe, and on that basis alleges, that DOE OFFICERS were acting in accordance with a custom or policy of excessive force and deliberate indifference to the rights of civilians.

26. As a result of DOE OFFICERS' actions, Plaintiffs have suffered profound and ongoing damages, including but are not limited to the loss of the love, companionship, comfort, care, assistance, protection, affection, and moral support of DECEDENT. DECEDENT's children, GONZALES and

E.B., have been permanently deprived of the guidance, nurturing, and parental presence that he would have provided. Plaintiffs have also suffered the loss of financial support and household services that DECEDENT contributed and would have continued contribute, and have also incurred funeral and burial expenses.

27. Also as a result of the shooting, DECEDENT endured pre-death pain and suffering and lost his life, his enjoyment of life, and his earning capacity.

## FIRST CLAIM FOR RELIEF

### Fourth Amendment— Detention and Arrest (§ 1983)

(Plaintiffs E.B. and GONZALES against DOE OFFICERS)

28. Plaintiffs incorporate by reference the allegations set forth above.

29. Plaintiffs E.B. and GONZALES bring this claim for relief in their capacities as successors-in-interest to DECEDENT, pursuant to California Code of Civil Procedure § 377.30.

30. At all relevant times, DOE OFFICERS were acting under color of state law and within the course and scope of their employment with the LAPD.

31. Defendants DOE OFFICERS detained DECEDENT without reasonable suspicion and arrested him without probable cause.

32. When Defendants DOE OFFICERS gave DECEDENT commands, pointed their weapons at him, and then shot him, they violated DECEDENT's right to be secure in his person against unreasonable searches and seizures as guaranteed to DECEDENT under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment. Further, the scope and manner of the detention and arrest was unreasonable.

33. Each of DOE OFFICERS integrally participated and/or failed to intervene in this conduct. Each of DOE OFFICERS had a responsibility and realistic opportunity to intervene in the unlawful detention and arrest.

34. At all relevant times, DOE OFFICERS were acting in the course and scope of their employment with the CITY and were acting under color of law.

35. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of DECEDENT and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE OFFICERS.

36. As a result of their misconduct, Defendants DOE OFFICERS are liable for DECEDENT's injuries and death, either because they were integral participants in the wrongful detention and arrest, or because they failed to intervene to prevent these violations.

37. Plaintiffs E.B. and GONZALES seek survival damages on this claim, including damages for DECEDENT's pre-death pain and suffering, loss of life, loss of enjoyment of life, and lost earning capacity.

## SECOND CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force (§ 1983)**

(Plaintiffs E.B. and GONZALES against DOE OFFICERS)

38. Plaintiffs incorporate by reference the allegations set forth above.

39. Plaintiffs bring this claim for relief in their capacities as successors-in-interest to DECEDENT, pursuant to California Code of Civil Procedure § 377.30.

40. The Fourth Amendment to the United States Constitution, as incorporated against state actors by the Fourteenth Amendment, guarantees all persons the right to be free from excessive force by law enforcement officers.

41. At all relevant times, DOE OFFICERS were acting under color of state law and within the course and scope of their employment with the LAPD.

42. On December 31, 2025, at approximately 9:40 p.m., DOE OFFICERS responded to a call for “unknown trouble, possible restraining order violation” at or around the 500 block of West 37th Street, near South Pacific Avenue in the City of San Pedro, California. The reporting party, DECEDENT’s girlfriend, informed DOE OFFICERS that she and DECEDENT were permitted to have “peaceful contact” but that she wanted DECEDENT removed from her apartment. DOE OFFICERS had no information that DECEDENT had a weapon and no information that anyone had been injured. DOE OFFICERS encountered DECEDENT inside the reporting party’s apartment. When DOE OFFICERS attempted to physically restrain DECEDENT, an officer-involved shooting occurred. DECEDENT was struck by shots fired by DOE OFFICERS. DECEDENT was transported to the hospital, where he succumbed to his injuries caused by the gunshots.

43. At the time of the shooting, DECEDENT was unarmed and posed no immediate threat of death or serious bodily injury to any person. DOE OFFICERS had less-lethal options available and had time to assess the situation. The use of deadly force under these circumstances was excessive and objectively unreasonable and contrary to police standards and training.

44. DOE OFFICERS failed to provide a clear verbal warning that deadly force would be used, gave conflicting and confusing instructions to DECEDENT, and DECEDENT was not given an adequate opportunity to comply with DOE OFFICERS’ commands before he was shot.

45. Each of DOE OFFICERS integrally participated and/or failed to intervene in this conduct. Each of DOE OFFICERS had a responsibility and

realistic opportunity to intervene in the shooting and other uses of force against DECEDENT.

46. As a result of their misconduct, Defendants DOE OFFICERS are liable for DECEDENT's injuries and death, either because they were integral participants in the uses of force against DECEDENT, or because they failed to intervene to prevent these violations.

47. As a direct and proximate result of the actions of DOE OFFICERS, DECEDENT experienced conscious pain and suffering before his death. Plaintiffs seek survival damages on this claim for the violation of DECEDENT's rights, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life.

48. Plaintiffs further seek attorneys' fees and costs pursuant to § 1988.

49. The conduct of DOE OFFICERS was malicious, wanton, oppressive, and carried out with a conscious disregard for the constitutional rights and physical safety of DECEDENT. As a result, Plaintiffs are entitled to an award of punitive damages against DOE OFFICERS in their individual capacities.

## THIRD CLAIM FOR RELIEF

**Fourth Amendment—Denial of Medical Care (§ 1983)**

(Plaintiff E.B. and GONZALES against DOE OFFICERS)

50. Plaintiffs incorporate by reference the allegations set forth above.

51. Plaintiffs bring this claim for relief in their capacity as the successors-in-interest to DECEDENT, pursuant to California Code of Civil Procedure § 377.30.

52. At all relevant times, DOE OFFICERS were acting under color of state law and within the course and scope of their employment with the LAPD.

53. Upon information and belief, following the shooting of DECEDENT, DOE OFFICERS failed to render medical aid and failed to timely summon emergency medical care, despite knowing that DECEDENT had been shot and was in critical need of life-saving treatment. This failure to act was objectively unreasonable under the circumstances.

54. The denial and delay of medical care by DOE OFFICERS deprived DECEDENT of his right to be secure in his person against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, as incorporated to the states through the Fourteenth Amendment, in violation of §1983.

55. As a direct and proximate result of the acts and omissions of DOE OFFICERS, DECEDENT experienced conscious pain and suffering, physical and emotional distress, and ultimately died from the injuries he sustained.

56. Plaintiffs seek survival damages under this claim, including but not limited to pre-death pain and suffering, loss of life, and loss of enjoyment of life. Plaintiffs further seek attorneys' fees and costs pursuant to § 1988.

## FOURTH CLAIM FOR RELIEF

**Fourteenth Amendment—Denial of Familial Relationship (§ 1983)**

(All Plaintiffs against DOE OFFICERS)

57. Plaintiffs incorporate by reference the allegations set forth above.

58. Plaintiffs E.B. and GONZALES have a cognizable interest under the Due Process Clause of the Fourteenth Amendment to be free from unwarranted state interference in his familial relationships with their father. DECEDENT was involved in the day-to-day child rearing of E.B. and GONZALES. E.B. and DECEDENT maintained a close, loving, consistent

parent-child relationship. GONZALES and DECEDENT also maintained a close, loving, consistent parent-child relationship.

59. Plaintiff NUNEZ, the mother of DECEDENT, has cognizable interest under the Due Process Clause of the Fourteenth Amendment to be free from unwarranted state interference in her familial relationship with her son. NUNEZ was involved in the day-to-day child rearing of DECEDENT. DECEDENT and NUNEZ maintained a close, loving, consistent parent-child relationship.

60. At all relevant times, DOE OFFICERS were acting under color of state law and within the course and scope of their employment as OFFICERS for the LAPD.

61. The acts of DOE OFFICERS, including the use of deadly force against DECEDENT when he was unarmed and not posing an immediate threat of death or serious bodily injury, and the delay/denial of medical care, shock the conscience and constitute a violation of Plaintiff's substantive due process rights. DOE OFFICERS had time to deliberate before resorting to lethal force against DECEDENT.

62. The conduct of DOE OFFICERS was undertaken with a purpose to harm unrelated to any legitimate law enforcement objective and reflected a deliberate indifference and reckless disregard for DECEDENT's rights and the familial rights of DECEDENT's children and mother.

63. As a direct and proximate result of DOE OFFICERS' actions, DECEDENT died.

64. Plaintiffs bring this claim in their individual capacities. Plaintiffs seek wrongful death damages on this claim, compensatory damages for the interference with their familial relationship with DECEDENT, as well as attorneys' fees and costs pursuant to § 1988.

65. The conduct of DOE OFFICERS was malicious, wanton, oppressive, and carried out with a conscious disregard for the constitutional rights of DECEDENT and Plaintiffs. As a result, Plaintiffs are entitled to an award of punitive damages against DOE OFFICERS in their individual capacities.

## FIFTH CLAIM FOR RELIEF

**Municipal Liability: Unconstitutional Custom or Policy (§ 1983)**

(All Plaintiffs against the CITY and DOES 9-10)

66. Plaintiffs incorporate by reference the allegations set forth above.

67. When DOE OFFICERS fatally shot DECEDENT and then denied DECEDENT prompt and necessary medical care, DOE OFFICERS acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the Defendant CITY.

68. On information and belief, DOE OFFICERS were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with DECEDENT's death.

69. DOES 9-10, together with other CITY policymakers and supervisors, maintained, inter alia, the following unconstitutional customs, practices, and policies:

a) Using excessive force, including excessive use of deadly force;
b) Providing inadequate training regarding the use of deadly force;
c) Employing and retaining as officer individuals such as DOE OFFICERS whom Defendant CITY at all times material herein knew or reasonably should have known had dangerous propensities for abusing his authority and for using excessive force;
d) Inadequately supervising, training, controlling, assigning, and disciplining DOE OFFICERS and other personnel, including

DOE OFFICERS, whom Defendant CITY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including a failure to train with respect to the use of lethal firearms;

e) Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by DOE OFFICERS;

f) Failing to adequately discipline DOE OFFICERS for the above-referenced categories of misconduct, including "slaps on the wrist," discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g) Announcing that unjustified shootings are "within policy," including shootings that were later determined in court to be unconstitutional;

h) Even where shootings are determined in court to be unconstitutional, refusing to discipline, terminate, or retrain the officers involved;

i) Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue wall," "blue curtain," "blue veil," or simply "code of silence," pursuant to which police officers do not report other officers' errors, misconduct, or crimes. Pursuant to this code of silence, if questioned about an incident of misconduct involving another officer, while following the code, the officer being questioned will claim ignorance of the other officers' wrongdoing; and

j) Maintaining a policy of inaction and an attitude of indifference towards soaring numbers of police shootings and other uses of

force, including by failing to discipline, retrain, investigate, terminate, and recommend officers for criminal prosecution who participate in unjustified shootings.

70. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

71. Defendants CITY and DOES 9-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of DECEDENT, Plaintiffs, and other individuals similarly situated.

72. By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 9-10 acted with intentional, reckless, and callous disregard for the life of DECEDENT and for DECEDENT's and Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants CITY and DOES 9-10 were affirmatively linked to and were a significantly influential force behind the injuries of DECEDENT and Plaintiff.

73. The following are a few examples of Defendants CITY'S unconstitutional customs, practices and policies, and continued misconduct:

a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-

SVW (SHx), a unanimous jury found that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury found that the involved LAPD officers' use of deadly force against the decedent in that case was excessive and unreasonable.

c) In *Herrera, et al. v. City of Los Angeles, et al.*, case number 16-cv-02719-DSF (SHx), a unanimous jury found that the involved LAPD officer used excessive force.

d) In *Mears, et al. v. City of Los Angeles*, *et al.*, case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

e) In *Hernandez, et al. v. City of Los Angeles*, *et al.*, case number 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

f) In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against Cesar Frias, including the use of tasers and bean bag shotguns.

g) In *Navas, et al. v. City of Los Angeles, et al.*, case number CV15-09515 SVW(JCx), the City determined that the LAPD officer's use of deadly force against Sergio Navas was excessive and unreasonable.

h) In *Medina v. City of Los Angeles*, case number CV 06-4926-CBM

(Ex), a unanimous jury returned a verdict in plaintiff's favor, finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

i) In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, the family of an unarmed man (David Martinez), who was shot and killed by LAPD Rampart officers, alleged that the force used by the officers was excessive and unreasonable. Police reports confirmed that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

j) In *Petit, et al. v. City of Los Angeles, et a.,* Case No. 2:23-cv-00789-ODW (PVCx) a unanimous jury found that LAPD officers used excessive and unreasonable force when they shot the unarmed Mr. Petit.

k) In *Estate of Anthony Soderberg, et al., v. City of Los Angeles, et al.,* Case No. CV18-03861 FMO (JPRx), LAPD officers fired multiple lethal and less-lethal munitions at Mr. Soderberg, who was unarmed during the fatal shots.

l) In *Margarito Lopez, et al. v. City of Los Angeles, et al.*, Case No. 2:22-cv-07534-FLA-MAAx, LAPD officers used deadly force against Mr. Lopez as he was suffering from a mental health crisis. Plaintiffs alleged that the shooting was excessive and unreasonable and that Mr. Lopez posed no immediate threat of death or serious bodily injury at the time of the shots, which were fired when Mr. Lopez was some

distance away from the officers. The parties reached a seven-figure settlement.

m) In *Tammy Murillo v. City of Los Angeles, et al.*, Case No. 2:21-cv-08738, a unanimous jury returned a verdict in the plaintiff's favor, finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Murillo. The CITY found the use of deadly force was within LAPD policy.

n) In *Nicole Zelaya v. City of Los Angeles, et al.*, Case No. 2:20-cv-08382, a unanimous jury found that the involved LAPD officers used excessive force and restraint against Mr. Cedillo, causing his death. The jury also returned a finding that the CITY had failed to train its officers with respect to the risks of prone restraint and/or the risks of positional and/or restraint asphyxia.

o) In *Valencia v. City of Los Angeles, et al.*, Case No. 2:21-cv-01889, a unanimous jury found that the involved LAPD officer used excessive and unreasonable force in shooting Mr. Valencia, who was unarmed at the time of the shooting. The CITY found the shooting to be within policy.

74. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pre-death pain and suffering, loss of enjoyment of life, and death.

75. Accordingly, Defendants CITY and DOES 9-10 are liable to Plaintiffs for compensatory damages under § 1983.

76. Plaintiffs bring this claim individually and as the successors-in-interest to DECEDENT and seek wrongful death and survival damages under this claim. Plaintiffs also seek attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

**Municipal Liability: Failure to Train (§ 1983)**

(All Plaintiffs against CITY and DOES 9-10)

77. Plaintiffs incorporate by reference the allegations set forth above.

78. The acts of DOE OFFICERS, including fatally shooting DECEDENT when he was unarmed and posed no immediate threat of death or serious bodily injury to anyone, failing to give a warning that deadly force would be used prior to shooting, and then denying prompt and necessary medical care, deprived DECEDENT and Plaintiffs of their rights under the United States Constitution.

79. The training policies of Defendant CITY were not adequate to train its OFFICERS to handle the usual and recurring situations with which they must deal.

80. Defendant CITY was deliberately indifferent to the obvious consequences of its failure to train its OFFICERS adequately.

81. The failure of Defendant CITY to provide adequate training caused the deprivation of Plaintiffs' rights by DOE OFFICERS; that is, the defendants' failure to train is so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused the ultimate injury.

82. The following are only a few examples of cases where the involved officers were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that Defendant CITY failed to adequately train its officers, more specifically the failure to train with regard to the use of force:

a) In *Contreras v. City of Los Angeles*, case number 2:11-cv-01480-SVW (SHx), a unanimous jury found that the involved LAPD

officers used excessive and unreasonable force when they shot Mr. Contreras, who was unarmed.

b) In *P.C., et al. v. City of Los Angeles*, case number CV 07-3413 PLA, a unanimous jury found that the involved LAPD officers' use of deadly force against the decedent in that case was excessive and unreasonable.

c) In *Herrera, et al. v. City of Los Angeles, et al.*, case number 16-cv-02719-DSF (SHx), a unanimous jury found that the involved LAPD officer used excessive force.

d) In *Mears, et al. v. City of Los Angeles*, *et al.*, case number 2:15-cv-08441-JAK-AJW, a unanimous jury found *Monell* liability on the part of the City for failure to properly train its LAPD officers and found that the involved officers' use of deadly force was excessive and unreasonable.

e) In *Hernandez, et al. v. City of Los Angeles*, *et al.*, case number 2:16-cv-02689, a unanimous jury found that two LAPD officers used excessive unreasonable force and restraint against Alex Jimenez, who was unarmed.

f) In *L.D., et al. v. City of Los Angeles*, case number 2:16-cv-04626-PSG, a unanimous jury found that officers used excessive and unreasonable force against Cesar Frias, including the use of tasers and bean bag shotguns.

g) In *Navas, et al. v. City of Los Angeles, et al.*, case number CV15-09515 SVW(JCx), the City determined that the LAPD officer's use of deadly force against Sergio Navas was excessive and unreasonable.

h) In *Medina v. City of Los Angeles*, case number CV 06-4926-CBM (Ex), a unanimous jury returned a verdict in plaintiff's favor,

finding that the use of force was excessive and unreasonable. In that case, the involved officers were not disciplined or retrained for their use of force, and the CITY found that the officer's conduct was justified and did not violate any CITY policy.

i) In *Cano, et al. v. City of Los Angeles*, case number 2:15-cv-00333-JAK-E, the family of an unarmed man (David Martinez), who was shot and killed by LAPD Rampart officers, alleged that the force used by the officers was excessive and unreasonable. Police reports confirmed that Mr. Martinez was unarmed at the time of the shooting. In that case, the involved officers were not disciplined or retrained for their use of deadly force, and the CITY found that the shooting was justified and did not violate any CITY policy.

j) In *Petit, et al. v. City of Los Angeles, et a.,* Case No. 2:23-cv-00789-ODW (PVCx) a unanimous jury found that LAPD officers used excessive and unreasonable force when they shot the unarmed Mr. Petit.

k) In *Estate of Anthony Soderberg, et al., v. City of Los Angeles, et al.,* Case No. CV18-03861 FMO (JPRx), LAPD officers fired multiple lethal and less-lethal munitions at Mr. Soderberg, who was unarmed during the fatal shots.

l) In *Margarito Lopez, et al. v. City of Los Angeles, et al.*, Case No. 2:22-cv-07534-FLA-MAAx, LAPD officers used deadly force against Mr. Lopez as he was suffering from a mental health crisis. Plaintiffs alleged that the shooting was excessive and unreasonable and that Mr. Lopez posed no immediate threat of death or serious bodily injury at the time of the shots, which were fired when Mr. Lopez was some distance away from the officers. The parties reached a seven-figure

settlement.

m) In *Tammy Murillo v. City of Los Angeles, et al.*, Case No. 2:21-cv-08738, a unanimous jury returned a verdict in the plaintiff's favor, finding that the involved LAPD officers used excessive and unreasonable force when they shot Mr. Murillo. The CITY found the use of deadly force was within LAPD policy.

n) In *Nicole Zelaya v. City of Los Angeles, et al.*, Case No. 2:20-cv-08382, a unanimous jury found that the involved LAPD officers used excessive force and restraint against Mr. Cedillo, causing his death. The jury also returned a finding that the CITY had failed to train its officers with respect to the risks of prone restraint and/or the risks of positional and/or restraint asphyxia.

o) In *Valencia v. City of Los Angeles, et al.*, Case No. 2:21-cv-01889, a unanimous jury found that the involved LAPD officer used excessive and unreasonable force in shooting Mr. Valencia, who was unarmed at the time of the shooting. The CITY found the shooting to be within policy.

83. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pain and suffering, loss of enjoyment of life, and death.

84. Accordingly, Defendants CITY and DOES 9-10 are liable to Plaintiffs for compensatory damages under § 1983.

85. Plaintiffs bring this claim individually and as the successors-in-interest to DECEDENT and seek wrongful death and survival damages under this claim. Plaintiffs also seek attorney's fees and costs under this claim.

## SEVENTH CLAIM FOR RELIEF

**Municipal Liability: Ratification (§ 1983)**

(All Plaintiffs against CITY and DOES 9-10)

86. Plaintiffs incorporate by reference the allegations set forth above.

87. At all relevant times, Defendants DOE OFFICERS were acting under color of state law and within the course and scope of their employment with LAPD.

88. The acts and omissions of Defendant DOE OFFICERS deprived DECEDENT and Plaintiffs of their rights under the United States Constitution, including by intentionally and unjustifiably shooting DECEDENT, resulting in his death, and depriving Plaintiffs of their familial relationship with him.

89. Upon information and belief, one or more final policymakers within LAPD, DOES 9-10, acting under color of law, have a history of ratifying unconstitutional uses of force, including excessive and deadly force.

90. Upon information and belief, DOES 9-10, acting under color of law and possessing final policymaking authority with respect to the actions of Defendant DOE OFFICERS, ratified the acts and omissions of Defendant DOE OFFICERS. This ratification includes express approval of the unjustified and excessive use of deadly force against DECEDENT when he was unarmed and did not pose an immediate threat of death or serious bodily injury to anyone.

91. LAPD's official policy prohibits the use of deadly force unless an individual poses an immediate threat of death or serious bodily injury to OFFICERS or others. The conduct of Defendant DOE OFFICERS was contrary to that policy, as DECEDENT posed no such threat at the time he was shot.

92. Upon information and belief, one or more final policymakers, DOES 9-10, have determined, or will determine, that the actions of Defendant DOE OFFICERS were "within policy," thereby ratifying those actions.

93. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pre-death pain and suffering, loss of enjoyment of life, and death.

94. Accordingly, Defendants CITY and DOES 9-10 are liable to Plaintiffs for compensatory damages under § 1983.

95. Plaintiffs bring this claim individually and as the successors-in-interest to DECEDENT and seek wrongful death and survival damages under this claim. Plaintiffs also seek attorney's fees and costs, and funeral and burial expenses, under this claim.

## EIGHTH CLAIM FOR RELIEF

**False Arrest / False Imprisonment (Wrongful Death)**

(All Plaintiffs against DOE OFFICERS and CITY)

96. Plaintiffs incorporate by reference the allegations set forth above.

97.On December 31, 2025, Defendants DOE OFFICERS unlawfully detained and arrested DECEDENT without reasonable suspicion or probable cause.

98.At the time of the detention and use of force, DECEDENT was not armed with a gun, not suspected of any serious or violent crime, and was not engaged in any criminal activity that justified his detention or arrest.

99.DOE OFFICERS detained DECEDENT through the use of force and coercion, escalating immediately to deadly force without providing clear commands, warnings, or lawful justification. DECEDENT was not free to leave,

and DECEDENT's freedom of movement was intentionally restricted by DOE OFFICERS for an appreciable amount of time.

100. The detention and ultimate fatal use of force constituted a false arrest and false imprisonment under California law. DECEDENT did not knowingly or voluntarily consent to the detention and arrest.

101. At all relevant times, DOE OFFICERS were acting within the course and scope of their employment with the Los Angeles Police Department. Thus, Defendant CITY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for injuries caused by its employees acting within the scope of their employment if the employee would be personally liable.

102. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.

103. Accordingly, Defendants CITY and DOE OFFICERS are liable to Plaintiffs for compensatory damages under § 1983.

104. Plaintiffs bring this claim in their individual capacities and also as successors-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30. Plaintiffs seek wrongful death damages on this claim, including loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT, as well as funeral and burial expenses.

105. The conduct of DOE OFFICERS was malicious, wanton, and oppressive, and carried out with conscious disregard for the rights and safety of DECEDENT, entitling Plaintiffs to an award of punitive damages against DOE OFFICERS in their individual capacities.

//

**NINTH CLAIM FOR RELIEF**

**Battery (Wrongful Death)**

(All Plaintiffs against DOE OFFICERS and CITY)

106. Plaintiffs incorporate by reference the allegations set forth above.

61. DOE OFFICERS intentionally shot DECEDENT, causing his fatal injuries. DOE OFFICERS had no legal justification for using force and restraint against DECEDENT, and their use of force while carrying out their duties as police officers was an unreasonable and nonprivileged use of force. DECEDENT did not consent to the uses of force.

107. At the time of the shooting, DECEDENT was unarmed and posed no immediate or imminent threat of death or serious bodily injury to anyone. Less-lethal alternatives were available. DOE OFFICERS failed to provide a clear verbal warning that deadly force would be used, gave conflicting and confusing instructions to DECEDENT, and DECEDENT was not given an adequate opportunity to comply with DOE OFFICERS' commands before he was shot.

108. At all relevant times, DOE OFFICERS were acting within the course and scope of their employment with the Los Angeles Police Department. Thus, Defendant CITY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for injuries caused by its employees acting within the scope of their employment if the employee would be personally liable.

109. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.

110. Accordingly, Defendants CITY and DOE OFFICERS are liable to Plaintiffs for compensatory damages under § 1983.

111. Plaintiffs bring this claim individually and in their capacities as successors-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30. Plaintiffs seek wrongful death damages on this claim, including for the loss of their father/son's love, affection, companionship, training, guidance, and financial support, as well as funeral and burial expenses.

112. The conduct of DOE OFFICERS was malicious, wanton, and oppressive, and carried out with conscious disregard for the rights and safety of DECEDENT, entitling Plaintiffs to an award of punitive damages against DOE OFFICERS in their individual capacities.

## TENTH CLAIM FOR RELIEF

**Negligence (Wrongful Death)**

(All Plaintiffs against all Defendants)

113. Plaintiffs incorporate by reference the allegations set forth above.

114. Law enforcement officers, including DOE OFFICERS, owe a duty to exercise reasonable care in the performance of their duties, including but not limited to: using appropriate de-escalation tactics; giving clear, non-conflicting commands; using deadly force only when necessary; and providing or summoning timely medical care after causing serious injury.

115. DOE OFFICERS breached that duty by shooting DECEDENT without legal justification. The actions of DOE OFFICERS were negligent, including but not limited to:

a) the unlawful and unreasonable use of deadly force;
b) the failure to de-escalate the situation prior to using force;
c) the failure to give clear, adequate, verbal commands and warnings that deadly force would be used;

d) the immediate and unjustified escalation to a deadly force option without attempting less-lethal alternatives;

e) the failure to maintain a safe tactical distance, tactically reposition, or use cover to allow time for assessment and communication;

f) the failure to reassess the threat posed by DECEDENT;

g) the failure to recognize and respond appropriately to DECEDENT's nonviolent and non-threatening behavior;

116. At the time of the shooting, DECEDENT was unarmed and posed no immediate threat of death or serious bodily injury to any person. DOE OFFICERS had less-lethal options available and had time to assess the situation. The use of deadly force under these circumstances was objectively unreasonable and contrary to police standards and training.

117. At all relevant times, DOE OFFICERS were acting within the course and scope of their employment with the LAPD. Thus, Defendant CITY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for injuries caused by its employees acting within the scope of their employment if the employee would be personally liable.

118. By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT.

119. Accordingly, Defendants CITY and DOES 1-10 are liable to Plaintiff for compensatory damages under § 1983.

120. Plaintiffs bring this claim individually and in their capacity as successors-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30. Plaintiffs seek wrongful death damages on this claim, including for the loss of his father/son's love, affection, companionship,

training, guidance, and financial support, as well as funeral and burial expenses.

**ELEVENTH CLAIM FOR RELIEF**

**Violation of Cal. Civil Code § 52.1**

(All Plaintiffs against DOE OFFICERS and CITY)

121. Plaintiffs incorporate by reference the allegations set forth above.

122. The Bane Act, California Civil Code § 52.1, prohibits any person, whether or not acting under color of law, from interfering by threat, intimidation, or coercion with the exercise or enjoyment of an individual's constitutional rights. DOE OFFICERS acted with the purpose and effect of interfering with those rights through coercive and deadly means.

123. When DOE OFFICERS unnecessarily shot DECEDENT, they interfered with his civil rights to be free from unreasonable searches and seizures, due process, equal protection of the laws, medical care, and life, liberty, and property. DOE OFFICERS intentionally used deadly force, demonstrating a reckless disregard for DECEDENT's right to be free from excessive force. DOE OFFICERS acted with a specific intent to interfere with DECEDENT's constitutional rights, which is established by evidence showing that DOE OFFICERS acted with reckless disregard for DECEDENT's constitutional rights.

124. Plaintiffs are informed and believe that DECEDENT reasonably perceived the conduct of DOE OFFICERS as violent and threatening, and that such conduct discouraged and ultimately eliminated his ability to exercise his constitutional rights.

125. At all relevant times, DOE OFFICERS were acting within the course and scope of their employment with the LAPD. Thus, Defendant CITY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to

California Government Code § 815.2(a), which provides that a public entity is liable for injuries caused by its employees acting within the scope of their employment if the employee would be personally liable.

126. The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages. By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of DECEDENT. The aforementioned acts and omissions also caused DECEDENT's pre-death pain and suffering, loss of enjoyment of life, loss of life, lost earning capacity, and death.

127. Accordingly, Defendants CITY and DOE OFFICERS are liable to Plaintiffs for compensatory damages under § 1983.

128. Plaintiffs bring this claim in their capacities as successors-in-interest to DECEDENT pursuant to California Code of Civil Procedure § 377.30.

129. The conduct of DOE OFFICERS was malicious, wanton, and oppressive, and carried out with conscious disregard for the rights and safety of DECEDENT, entitling Plaintiffs to an award of punitive damages against DOE OFFICERS in their individual capacities.

130. Plaintiffs seek survival damages, including damages for DECEDENT's pre-death pain and suffering, in their individual capacities and as successors-in-interest to DECEDENT. Plaintiffs also seek attorney fees under this claim pursuant to Civ. Code, § 52.1(h), including a multiplier.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs E.B., by and through his guardian *ad litem* Kameron Shawn Perez, ANGIE NUNEZ, and KRYSTAL GONZALES, request entry of judgment in their favor against Defendants CITY OF LOS ANGELES and DOES 1–10, as follows:

1. For compensatory damages in excess of thirty million dollars, including: survival damages—including pre-death pain and suffering, loss of life, loss of enjoyment of life— and wrongful death damages— including loss of love, affection, association, companionship, society, care, comfort, protection, and guidance;

2. For funeral and burial expenses and loss of financial support;

3. For punitive damages against DOE OFFICERS in an amount to be proven at trial;

4. For statutory damages;

5. For reasonable attorneys' fees and litigation expenses, including pursuant to § 1988 and applicable California law;

6. For costs of suit and interest incurred; and

7. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: October 7, 2026

**LAW OFFICES OF DALE K. GALIPO**

/s/ *Dale K. Galipo*
Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby submits this demand that this action be tried in front of a jury.

DATED: October 7, 2026

**LAW OFFICES OF DALE K. GALIPO**

/s/ *Dale K. Galipo*
Dale K. Galipo
Renee V. Masongsong
*Attorneys for Plaintiffs*